IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

R. R. FREDEKING, II and
DEBBIE FREDEKING,

          Plaintiffs,

v.                              CIVIL ACTION NO. 3:16-12415

JPMORGAN CHASE BANK, N.A.,

          Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are three motions for partial summary judgment. ECF Nos. 105, 107, 110. For the foregoing reasons, the Court finds the following: for Defendant's Motion for Partial Summary Judgment on Counts One and Two (ECF No. 107), the Court **GRANTS IN PART**, **DISMISSES** Count Two in its entirety and Debbie Fredeking as a Plaintiff from Count One of the Complaint, and **DENIES IN PART** for the remainder; for Defendant's Motion for Partial Summary Judgment on Count Three (ECF No. 105), the Court **GRANTS IN PART**, **DISMISSES** Debbie Fredeking as a Plaintiff in Count Three of the Complaint and all claims under West Virginia Code Articles Six and Seven, and **DENIES IN PART** for the remainder; for Plaintiffs' Motion for Partial Summary Judgment (ECF No. 110), the Court **DENIES** the motion.

## I. BACKGROUND

On April 13, 2016, Plaintiff R. R. Fredeking, II ("Mr. Fredeking") signed a rental contract with Rainbow Rentals for the use of a boat while in the Bahamas. *Rental Agreement*, ECF No. 107-1; *R. R. Fredeking Depo.*, p. 147, ECF. 107-2. In the Agreement, Mr. Fredeking assumed total responsibility "for damage to the boat or loss of any items." *Rental Agreement*, ¶ 10. After signing

the Rental Agreement, Mr. Fredeking signed a credit card authorization slip. *R. R. Fredeking Depo.*, at 29–30. Mr. Fredeking claims he was told the slip was an authorization for a charge up to $2500.00 and he would only need to cover the insurance deductible in the event of any damage or loss. *Id.* at 33. Mr. Fredeking did not read the contract and does not recall the written amount on the credit card authorization slip.[1] *Id.* at 29–33.

The boat was rented with a credit card issued by Defendant Chase Bank USA, N.A. ("Chase"). *Compl.*, ¶ 12, ECF No. 1-1; *First Interrog.*, pp. 3–4, ECF No. 107-4. This credit card account is governed by the Cardmember Agreement between Mr. Fredeking and Chase, and serves as the basis for the breach of contract claim. *Compl.*, ¶ 8; *R. R. Fredeking Depo.*, at 143. The Cardmember Agreement imposes a "credit line", or "credit limit", but any charges that exceed the credit line may be allowed by Chase. *Cardmember Agreement*, p. 1, ECF No. 107-9. The Cardmember Agreement envisions a class of persons, "authorized users", who may have access to the line of credit created by the Agreement, but explicitly states the primary cardmember is solely responsible for all authorized users' charges to the account.[2] In the event a cardmember disputes a charge that appears on the billing statement, the cardmember can contact Chase, which will trigger an investigation by Chase.[3] *Id.* at 4. If Chase believes there was no error in processing the disputed charge, the cardmember is obligated to pay the disputed amount. *Id.*

---

[1] There is much confusion as to the number of credit card authorization slips and what appeared on them. Mr. Fredeking's testimony ranges from one signed slip that he thought was for $2500.00, but can't recall what it said, to two credit card slips, with one being blank and the other being for $2500.00. *R.R. Fredeking Depo*, pp. 33, 147. Chase ultimately billed three separate charges from Rainbow Rentals in the amounts of $725.63, $2500.00, and $60,931.00. *Billing Statements*, pp. 22, 25, ECF No. 114-1; *April Statement*, p. 5, ECF No. 115-1.

[2] The Court makes no determination as to whether an authorized user is a third-party beneficiary to a cardmember agreement. While the Court found no caselaw on point, the Court sees a plausible argument applying this doctrine to authorized users, as the Cardmember Agreement appears to envision a third-party whose benefit is access to a line of credit.

[3] The Fair Credit Billing Act is incorporated into the Contract, requiring an investigation

During the course of Mr. Fredeking's rental period, the boat rented from Rainbow Rentals was stolen. *R. R. Fredeking Depo*, at 30. Mr. Fredeking's Chase credit card was charged separate transactions of $2500.00 and $60,931.00 by Rainbow Rentals on April 18, 2016. *Billing Statements*, pp. 22, 25, ECF No. 114-1. On the same day, Chase received a fraud claim from Plaintiffs regarding the $60,931.00 charge with Rainbow Rentals. *O'Malley Depo.*, p. 52, ECF No. 114-4. The account used in the transaction was closed and Mr. Fredeking was sent a letter dated April 24, 2016, from Chase's Fraud Department notifying him of the investigation. *Chase Letters*, p. 3, ECF No. 107-11. This included a summary of the disputed charges, which listed both the $2500.00 and the $60,931.00 charges by Rainbow Rentals. *Id.*

Subsequently, Chase conducted an investigation involving several members of their Fraud Department. An initial investigation was conducted by Kirill Grinash, who determined the charge was valid on June 6, 2016. *Grinash Rebill*, ECF No. 114-6. The basis for this conclusion was Mr. Fredeking's past business with Rainbow Rentals, the existence of a valid rental contract, and the admission that the boat was stolen during the course of its rental. *Id.* This report was reviewed by Tracey Dowdle, who sent the report back to Mr. Grinash because Mr. Fredeking had not been reached by phone during the investigation. *Id.* However, reaching a customer by phone is not determinative of the outcome of a fraud investigation. *Grinash Depo.*, p. 115, ECF No. 114-5.

The fraud investigation continued when the claim was reviewed by Tracie Olson. *Olsen Rebill*, ECF No. 114-9. Ms. Olson did not make contact Mr. Fredeking during her investigation. *Id.*; *Pl. Mem. Sup. Summ. J.*, at 3. On June 20, 2016, she determined the charge was valid based on the cardmember's history with Rainbow Rentals and a match between the signature on the charge slip and the one Chase had on file for Mr. Fredeking. *Id.*; *see also Charge Slip*, ECF No.

---

to a disputed charged be "reasonable." *Cardmember Agreement*, p. 4; 12 C.F.R. §1026.13.

114-1.[4] Ms. Olson was assisted by Ms. Jody Casas during this review. *Casas Depo.*, p. 40, ECF No. 114-8. After their determination, the dispute was moved from the Fraud Department to the Merchant Dispute Department, based on the admission that Mr. Fredeking participated in the transaction. *Id.* at 17.

On June 22, 2016, Mr. Fredeking's Chase account was again billed for the disputed $60,931.00. *Billing Statements*, at 25. In response, Mr. Fredeking called Chase and stated that he spoke with Chase employees "Beverly" and "Ray" to further dispute this charge. *R. R. Fredeking Depo.*, at 119. Mr. Fredeking followed up with a letter to Chase dated July 1, 2016. In it, he outlined that he had only authorized a charge to cover the cost of the rental and a charge of $2500.00 to cover the insurance deductible, which would be refunded once the boat was returned. *July 1 Letter*, p. 1, ECF No. 115-11.[5] Mr. Fredeking's letter further stated he had become aware of Ms. Casas billing dispute review through a conversation she had with Ms. Fredeking. *Id.* It appears that no conversations took place between the Chase Fraud investigators and the Fredekings. Subsequently, Mr. Fredeking received a letter dated July 8, 2016 that Chase's Fraud Department determined both the charges of $2500.00 and $60,931.00 were valid. *Chase Letters*, at 6. Beside each listed charge the letter stated that "[Mr. Fredeking] notified [Chase] that this transaction is valid."[6] *Id.* Chase claims Mr. Fredeking provided notice that these charges were valid because of the contract between him and Rainbow Rentals. *O'Malley Depo.*, at 54. However, Chase submitted no evidence that it ever talked directly to the merchant, or anyone else, about Mr. Fredeking's alleged oral modification of the Rental Agreement, limiting his liability to the $2500 deductible.

---

[4] The amount charged, not the signature itself, is disputed. *R. R. Fredeking Depo.*, at 147.
[5] A creditor's duties under the Fair Credit Billing Act to conduct a reasonable investigation are triggered only by a timely written notice from the credit card holder. 15 U.S.C. § 1666.
[6] Chase states that these types of letters are automated. *O'Malley Depo.*, at 41.

On July 18, 2016, the Merchant Disputes Department also determined the charge was valid on the basis of the Rental Agreement. *Stump Depo.*, p. 86, ECF No. 114-3. In a letter dated July 19, 2018, Chase wrote to Mr. Fredeking and notified him of its determination of the validity of the $60,931.00 charge. *Chase Letters*, at 7. In that letter, Chase told Mr. Fredeking it had "requested additional information so that [Chase] could move forward with [its] review, but [Chase] ha[d]n't received that information to date." *Id.* However, the Merchant Disputes Department had not actually requested any additional information. *Stump Depo.*, at 108.

The present action was filed in the Circuit Court of Cabell County on November 9, 2016 and removed to this Court on December 21, 2016. *Notice of Removal*, ECF No. 1. In their Complaint, Plaintiffs allege common law breach of contract based on the Cardmember Agreement, request a declaratory judgment stating the charge itself is invalid, and claim violations of the West Virginia Consumer Credit Protection Act ("WVCCPA"). *Compl.*, at 4–7. All of the instant motions for summary judgment were filed on November 21, 2018. ECF Nos. 105, 107, 110.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering this motion, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S.

at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

In their motion, Plaintiffs request the Court grant partial summary judgment on the claims in Counts One and Three. *Pl. Mot. Part. Summ. J.*, p. 1, ECF No. 110. Conversely, Chase's bifurcated motions cumulatively seek summary judgment on all three counts and raise the issue of standing as to Plaintiff Debbie Fredeking ("Ms. Fredeking") for the breach of contract claim, as well as both Plaintiffs' standing to raise claims under the WVCCPA. *Def. Mot. Part. Summ. J. I*, p. 1–3, ECF No. 107; *Def. Mot. Part. Summ. J. II*, p. 1–2, ECF No. 105. For the sake of comprehensibility, the Court will first address the issues of standing, followed by the arguments on each of the counts alleged in the Complaint.

*A. Standing*

In supporting memoranda, Chase challenges the standing of Ms. Fredeking on the breach of contract claim, as well as both of the Plaintiffs' standing to bring a claim under the WVCCPA. *Def. Mem. Supp. Summ. J. I*, pp. 3–4, ECF No. 108, ; *Def. Mem. Sup. Summ. J. II*, pp. 12–15, ECF No. 106. As a threshold matter, the Court must address the choice of law issue before determining standing. *See Felman Prod., Inc. v. Bannai*, 476 F. Supp. 2d 585, 586 (S.D.W. Va. 2007).

*1. Choice of Law*

"When exercising diversity jurisdiction, a federal district court must apply the choice-of-law rules of the state in which it sits." *Cavcon, Inc. v. Endress ± Hauser, Inc.*, 557 F. Supp. 2d

706, 719 (S.D.W. Va. 2008) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496 (1941). Accordingly, the conflicts rules of West Virginia apply here.

Generally, West Virginia courts are deferential to the choice of law provision in a contract. However, "[a] choice of law provision in a contract will not be given effect when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or when the application of that law would offend the public policy of this state." *General Electric Company v. Keyser,* 275 S.E.2d 289, Syl. Pt. 1 (W. Va. 1981). Here, the Cardmember Agreement calls for Delaware law to apply. *Cardmember Agreement*, at 4. Chase is a Delaware corporation and neither party has made a challenge on the basis of public policy. *Notice of Removal*, ¶ 12. As such, the Court finds Delaware law applies to the breach of contract claim.

Plaintiffs' claims under the WVCCPA are alleged as independent causes of action and seek remedy for conduct after the breach. *Compl.*, ¶¶ 35–42. Since Plaintiffs argue their WVCCPA claims as independent state law violations, they are construed under West Virginia law. *See Bishop v. Ocwen Loan Servicing, LLC*, No. 3:10-CV-0468, 2010 WL 4115463, at *7 (S.D.W. Va. July 9, 2013) (holding that claims under the WVCCPA can be pleaded as remedies in contract law or independent causes of action); *compare Harrison v. PNC Bank, Nat. Ass'n*, No. 3:13-19944, 2015 WL 2171632 (S.D.W. Va. May 8, 2015) (granting summary judgment for the defendant on WVCCPA claims that a loan contract was unconscionable, because Ohio law governed the loan).

*2. Standing – Breach of Contract*

Chase claims Ms. Fredeking has no standing to allege a breach of contract claim, as she is not an account holder with Chase, nor is she obligated to pay for charges on Mr. Fredeking's account. *Def. Mem. Sup. Summ. J. I*, at 3–4. In response, Ms. Fredeking claims she is a third-party

beneficiary to the contract and is entitled to enforce its terms. *Resp. to Def. Mot. Summ. J.*, pp. 3–4, ECF No. 119.

"As a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions." *E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols. L.L.C.*, 248 F. Supp. 3d 570, 575 (D. Del. 2017), *appeal dismissed sub nom. EI DuPont de Nemours & Co. v. MacDermid Printing Sols.*, No. 17-1895, 2017 WL 5158652 (3d Cir. July 19, 2017). A contract creates an intended beneficiary where "(1) the contracting parties intended that the third party would benefit from the contract, (2) the benefit is intended to be a gift or in satisfaction of a pre-existing obligation to the third party, and (3) the intent to benefit the third party is a material part of the contracting parties' purpose in entering into the contract." *Id.* (internal quotes omitted).

As a general principle of contact law, "[t]he party asserting third party beneficiary status bears the burden of demonstrating that the contract, or a provision thereof, was made for its benefit." *MBIA Ins. Corp. v. Royal Indem. Co.*, 519 F. Supp. 2d 455, 465 (D. Del. 2007), *aff'd*, 321 F. App'x 146 (3d Cir. 2009) (citing 13 *Williston on Contracts* § 37:8). "Delaware law make[s] clear that a third party beneficiary will *only* be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third party beneficiary status. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 197 (3d Cir. 2001) (emphasis in original); *see also Meades v. Wilmington Hous. Auth.*, No. C.A. 19743-NC, 2003 WL 939863, at *3 (Del. Ch. Mar. 6, 2003) ("Delaware law permits contracts to be made for the benefit of a third party and gives the third party the right to enforce promises that were made for the third party's benefit.").

Plaintiffs have not provided, nor has the Court unearthed, any caselaw holding an authorized user of a credit card is a third-party beneficiary. This class of persons have no

guaranteed access to the use of another's credit line but may certainly argue a contemplated benefit within the bounds of the contract. Regardless, this principle is not applicable here as Ms. Fredeking has not alleged a breach of any right that would pertain to her.

Even if Ms. Fredeking were found to be a third-party beneficiary to the Cardmember Agreement, her rights would only extend so far as to have access to Mr. Fredeking's credit line. Here, her claims do not assert any impingement on her ability to use the account, but instead allege that Chase breached the terms by permitting an unauthorized charge by the cardmember on the card. Per the terms of the contract, the primary cardmember is solely responsible for any debt incurred. *Cardmember Agreement*, at 1. Thus, Ms. Fredeking's alleged rights have not been violated under the claims in the Complaint. Therefore, the Court finds Ms. Fredeking has no standing for the breach of contract claim, and is dismissed from Count One of the Complaint.

### 3. Standing – WVCCPA

Chase alleges Mr. and Ms. Fredeking have no standing under the WVCCPA. Chase argues the WVCCPA act has a residency requirement but Plaintiffs are not residents of West Virginia, the services at issue were delivered outside of West Virginia, and Ms. Fredeking is not a "consumer" as required and defined by the Act. *Def. Mem. Sup. Summ. J. II*, at 12–15.

#### a. Residency

As this Court has held, residency is not a requirement under the WVCCPA. *Polis v. Am. Liberty Fin., Inc.*, 237 F. Supp. 2d 681 (S.D.W. Va. 2002). "[T]he exclusions to the WVCCPA are clearly identified in § 105 and those exclusions do not limit the Act only to West Virginia residents." *Id.* at 686. "Instead, it merely clarifies what law will control under the circumstances delineated therein." *Id.* (citing *Rhoades v. West Virginia Credit Bureau Reporting Serv., Inc.*, 96 F.Supp.2d 528, 533–34 (S.D.W.Va.2000) Accordingly, Plaintiffs' residency is not relevant.

*b. Delivery in West Virginia*

While the WVCCPA is not limited to residents of West Virginia, there must be some substantive link tying the alleged behavior violating the statute to the state. The WVCCPA "represents a comprehensive attempt on the part of the legislature to extend protection to the consumers and persons who obtain credit in [the] State . . . ." *Harless v. First Nat'l Bank,* 246 S.E.2d 270 (W. Va. 1978).

Chase argues the services at issue were provided in the Bahamas, and thus not subject to the WVCCPA. *Def. Mem. Sup. Summ. J. II*, at 13. This facile argument mischaracterizes the service rendered by Chase as providing the rental boat and runs counter to Chase's argument earlier in its memorandum that the Rental Agreement and the Cardmember Agreement are distinctly separate transactions. *Def. Mem. Sup. Summ. J. I*, at 6. The service Chase provides is a line of credit. This credit was established in Huntington, West Virginia and monthly bills were delivered to Mr. Fredeking at his Huntington address. *Billing Statements*, *passim*. Because this service was delivered in West Virginia, there are sufficient contacts and delivery of services to expose Chase to the WVCCPA. *See also Polis v. Am. Liberty Fin., Inc.*, 237 F. Supp. 2d at 687 (holding that though property securing a disputed note was located in Kentucky, Defendants were potentially liable under the WVCCPA because the loan was contracted for in West Virginia).

*c. "Consumers" under the WVCCPA*

To allege a claim under the WVCCPA, plaintiffs must be a "consumer" as defined by statute. *Young v. EOSCCA*, 800 S.E.2d 224 (W. Va. 2017). The statutory definition "leaves no doubt that a 'consumer' seeking recovery under the provisions of West Virginia Code § 46A-5-101(1) 'for any prohibited debt collection practice' must be obligated or allegedly obligated to owe the specific debt at issue." *Id*. at 229.

As previously discussed, the terms of the contract clearly state Ms. Fredeking is not liable for any debt on the account. Though Ms. Fredeking has claimed the debt was reported in her name, she has not produced any evidence to that effect, nor has she shown that collection notices of the debt at issue were directed to anyone other than Mr. Fredeking. Furthermore, neither plaintiff brought a debt reporting or credit claim. As such, Ms. Fredeking has no standing for claims under the WVCCPA. Accordingly, she is dismissed from Count Three of the Complaint.

*B. Count One – Breach of Contract*

In the Complaint, Mr. Fredeking alleges a breach of contract based on the Cardmember Agreement. *Compl.*, ¶ 8. He claims the breach occurred when Chase allowed an unauthorized charge on the account that exceeded his credit limit and failed to conduct a reasonable investigation. *Pl. Mem. Sup. Summ. J.*, pp. 8–9, ECF No. 111.[7] Mr. Fredeking further argues he is entitled to summary judgment on the matter because the fact that the charge exceeded the credit limit is undisputed. *Id.* Mr. Fredeking further argues that Chase failed to comply with its own policies and the Fair Credit Billing Act ("FCBA"), which is incorporated by reference into the Cardmember Agreement, by failing to conduct a reasonable investigation. *Id.* at 9–10.

Conversely, Chase argues that none of the alleged conduct breaches any specific term of the contract and it is thus entitled to summary judgment in its favor. Chase points out that the Cardmember Agreement states the account is a "credit access line" and does not have a "credit limit." *Def. Mem. Sup. Summ. J. II.*, at 5–6 ("[Chase] may, but [is] not obligated to, allow your Account to go over its credit line.") (quoting *Cardmember Agreement*, at 1). Furthermore, neither the contract nor the FCBA, which is implemented through Regulation Z, defines a what constitutes

---

[7] In response to Defendant's Partial Motion for Summary Judgment for Counts 1 & 2, Plaintiffs incorporate their arguments from the Memorandum in Support of Plaintiffs' Partial Motion of Summary Judgment (ECF No. 111). *Resp. Def. Mot. Summ. J.*, p. 2, ECF No. 119.

a reasonable investigation, and the terms of the contract envision parties disagreeing as to the outcome of an investigation. *Id.* at 5–7 (quoting *Cardmember Agreement*, at 4).

Though the terms of the Cardmember Agreement states that Chase can authorize charges beyond the credit line, the contract itself conflates the terms "credit line" and "credit limit." *Cardmember Agreement*, at 1. This ambiguity is further exacerbated by Mr. Fredeking receiving monthly statements that indicate the "credit limit" set at $25,000. *Billing Statements*, *passim*.

Furthermore, neither party contests that Chase had a duty to conduct a reasonable investigation.[8] Mr. Fredeking supplied evidence that he notified Chase of an oral modification of the Rental Agreement between him and Rainbow Rentals that limited his liability to $2500.00. *July 1 Letter*, at 1. Chase offers no evidence that it inquired directly about this modification and hangs its hat primarily on the existence of the Rental Agreement. Chase's argument about the Cardmember Agreement envisioning a difference of opinion as to the outcome of an investigation misses the point. Mr. Fredeking does not allege the breach is based on the outcome of the investigation, but the reasonableness of the investigation itself.

Neither the contract, nor the FCBA, define what constitutes actions that must be taken to qualify an investigation as "reasonable." The Court finds that differing minds could reasonably reach opposing conclusions as to whether Chase's investigation of the disputed charge was "reasonable." As such, the Court denies both Chase and Mr. Fredeking's motions for summary judgment on this issue.

---

[8] Chase's contention on this issue is not that the FCBA and Regulation Z do not apply to it, but that Mr. Fredeking failed to allege their violation. Plaintiffs choose an admittedly odd path by not stating a claim directly under the FCBA, but the terms of the contract still incorporate the FCBA. Even without this incorporation, the contract fails to define what constitutes an "investigation" and a reasonableness standard would be read in to cure this ambiguity.

*C. Count Two – Declaratory Judgment*

Chase argues that because the breach of contract claim fails, so does the request for declaratory relief. While not explicitly alleged, Chase's motion raises the issue of duplicative pleadings and conservation of judicial resources.

"Federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996). Even if a plaintiff seeks declaratory judgment under state law, district courts apply the federal Declaratory Judgment Act. *See McNeely v. Soyoola*, No. 2:12-CV-8727, 2013 WL 3457731, at *2 (S.D.W. Va. July 9, 2013) (citing *Bourazak v. N. River Ins. Co.,* 379 F.2d 530, 533 (7th Cir.1967) ("The Declaratory Judgment Act is a procedural statute and creates no substantive rights.")).

The Declaratory Judgment Act states that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought." 28 U.S.C. § 2201(a). A court may constitutionally exercise jurisdiction in a declaratory judgment proceeding only when "the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Volvo Constr. Equip. N. Am. v. CLM Equip. Co.,* 386 F.3d 581, 592 (4th Cir.2004) (internal quotations omitted). If a district court possesses declaratory judgment jurisdiction, it may exercise its discretion and decline to entertain the action. *Id.* at 594; *see also Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."). The Fourth Circuit recognizes that "the federal trial courts should weigh the legitimate concerns of efficiency and comity when deciding whether to award declaratory relief." *Id.*

Furthermore, a district court "has the duty to consider whether it should abstain from exercising its discretionary jurisdiction to avoid needlessly deciding state issues and to prevent duplicitous litigation." *McNeely*, 2013 WL 3457731, at *3 (quoting *Gov't Emps. Ins. Co. v. Dizol,* 133 F.3d 1220, 1232 (9th Cir.1998) (internal quotations omitted). "Although concerns over duplicitous litigation generally arise with reference to concurrent state court proceedings, the underlying efficiency concerns hold no less true when the concurrent proceeding is in federal court. *See Great Am. Ins. Co. v. Gross,* 468 F.3d 199, 206 (4th Cir.2006).

Here, Plaintiffs request the Court declare the charge "unlawful." Insofar that Plaintiffs claim the charge is unlawful because it breached the contract when Chase allegedly failed to conduct a "reasonable investigation", this claim is needlessly duplicative. To the extent that Plaintiffs allege the credit charge is unlawful because it was fraudulent, the Court finds that Plaintiffs have not pled a claim of fraud and the Court does not have the input of a necessary party (Rainbow Rentals) to make such a determination. As such, the Court dismisses Count Two of the Complaint, and effectively dismisses Debbie Fredeking from the case entirely.

*D. Count Three – Violations of the WVCCPA*

As a final matter, Mr. Fredeking alleges four separate violations of the WVCCPA in the Complaint. These include violations of §§ 46A-2-127; 46A-2-128; 46A-6-101, *et. seq.*; and 46A-7-111. In his motion for summary judgment, Mr. Fredeking recharacterizes his Complaint as raising only two claims under the WVCCPA. *Pl. Mem. Sup. Summ. J.*, at 11. In its cross motion for summary judgment on the claim, Chase addresses all the violations as alleged in the Complaint. *Def. Mem. Sup. Summ. J. II.*, at 15–20. The Court addresses each allegedly violated section of the Act individually.

*1. W. Va. Code § 46A-2-127 – Fraudulent, Deceptive, or Misleading Actions*

Chase argues there was no alleged action on its part which constitutes "debt collection" and, alternatively, any such action did not violate the statute. *Id.* at 15–16. Mr. Fredeking counters that the letters from Chase stating Mr. Fredeking notified Chase the disputed transaction was valid, and the letter from Chase stating that it had requested more information from him, were fraudulent or misleading and attempted to collect a debt. *Pl. Mem. Supp. Summ. J.*, at 11–12.

The Court's analysis is guided by the West Virginia Supreme Court of Appeals' instruction the WVCCPA be liberally construed in accordance with its remedial nature. *See State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516 (W. Va. 1995). Under the WVCCPA, a debt collector is "any person or organization engaging directly or indirectly in debt collection." W. VA. CODE § 46A–2–122(d). The definition for what constitutes debt collection is relatively broad. "Debt Collection means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer." W. VA. CODE § 46A–2–122(c).[9]

Chase admits the statement in the July 19 letter saying it had requested more information was false. *Stump Depo.*, at 108. Furthermore, Chase argues that the statement in the July 8 letter saying Mr. Fredeking *told* it the transaction was valid was based on the Rental Agreement and not on a verbal admission. *O'Malley Depo.*, at 54. Whether the latter statement was "misleading"

---

[9] In the Pretrial Conference, counsel for Chase stated the federal Fair Credit Billing Act defines what constitutes debt collection and billing statements were not included in that definition. However, the FCBA has no preemptory effect on state law claims, and therefore cannot define what constituted "debt collection." 15 U.S.C. 1666j(a); *Chevy Chase Bank v. McCamant*, 512 S.E.2d 217, 222 (W. Va. 1998) ("we find that the WVCCPA is not preempted by federal law from regulating the appellee's debt collection practices."). As such, "debt collection" under the WVCCPA is defined by state statute.

under the WVCPPA is a dispute of material fact open for interpretation. Furthermore, whether the purpose of these letters was to collect on a debt, or only to notify Mr. Fredeking of the result of the investigation, is a disputed material fact. Thus, these issues are proper for jury determination. *See Hager v. Am. Gen. Fin., Inc.*, 37 F. Supp. 2d 778, 789 (S.D.W. Va. 1999) (holding summary judgment inappropriate when a material disputed issue existed as to whether an act by the defendant constituted debt collection).

*2. W. Va. Code § 46A-2-128 – Unfair or Unconscionable Means*

Mr. Fredeking claims he is entitled to summary judgment here, as the investigation conducted by Chase was "unreasonable" and thus constituted an unfair act in an attempt to collect a debt. *Pl. Mem. Sup. Summ. J.*, at 12. Chase counters by stating Mr. Fredeking did not allege or show any action by Chase that runs counter to the enumerated list of prohibitions in section 128 of the Act. *Pl. Mem. Sup. Summ. J. II.*, at 17. However, the list of prohibited acts in that section is not exhaustive. The prefacing language reads: "No debt collector may use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section[.]" W. Va. Code § 46A-2-128.

As previously discussed, Mr. Fredeking brought violations of the WVCCPA as claims separate from his breach of contract claim. He alleges the investigation by Chase was an unfair or unconscionable method for collecting an allegedly unauthorized debt.[10] Just as a determination as to whether the investigation was reasonable is a question to be committed to the jury to determine a breach of contract, so must the question as to whether this was a debt collection practice which was unfair or unconscionable be similarly committed.

---

[10] This distinction is important, as any claim under the WVCCPA as a remedy for an unconscionable contract or breach of contract would raise conflict-of-law issues.

*3. W. Va. Code § 46A-6-101, et. seq. – Unfair or Deceptive Acts in Trade or Commerce*

Chase argues summary judgment on any claim under Article Six of the WVCCPA should be granted in its favor, as no allegation constitutes a "good or service" under the general interpretation of this article's regulation of "trade or commerce." *Def. Mem. Sup. Summ. J. II.*, at 18. Mr. Fredeking fails to address Chase's claims, or ever mention this article of the WVCCPA beyond the Complaint. The West Virginia Supreme Court of Appeals has acknowledged that Article Six does not define what constitutes a good or service, and thus turns to the definitions found in Article One. *State ex rel. Morrisey v. Copper Beech Townhome Communities Twenty-Six, LLC*, 806 S.E.2d 172, 181 (W. Va. 2017).

"'Services' includes: (a) Work, labor and other personal services; (b) privileges with respect to transportation, use of vehicles, hotel and restaurant accommodations, education, entertainment, recreation, physical culture, hospital accommodations, funerals, cemetery accommodations, and the like; and (c) insurance." W. VA. CODE § 46A-1-102(47). Though Chase presents caselaw holding loans do not constitute a "good or service", the Court is not convinced creditors fall out of the reach of Article Six. However, Mr. Fredeking is not arguing the credit line service itself was unfair or deceptive, but that the investigation by Chase in effort to collect an of an unauthorized debt was.[11] These claims fall within the realm of the regulations found in Article Two of the Act. As Mr. Fredeking has not sufficiently provided supporting facts, argument, or evidence, the Court grants summary judgment for Chase on any claim under Article Six of the WVCCPA.

---

[11] *See supra*, note 10; *see also Harrison v. PNC Bank, Nat. Ass'n*, No. 3:13-19944, 2015 WL 2171632 (S.D.W. Va. May 8, 2015) (granting summary judgment for the defendant on WVCCPA claims that a loan contract was unconscionable, because Ohio law governed the loan).

*4. W. Va. Code § 46A-7-111 – Civil Actions by the Attorney General*

In the Complaint, Mr. Fredeking claims the unauthorized charge by Chase is an "excess charge" under W. Va. Code § 46A-7-111. *Compl.*, ¶ 40. Chase argues summary judgment on any claim under Article Seven of the WVCCPA should be granted in its favor, as this article applies only to actions by the Attorney General. *Def. Mem. Sup. Summ. J. II.*, at 19–20. Mr. Fredeking has not provided any supporting facts, argument, or evidence as to this claim, and the Court finds Chase's argument to be legally sound. As such the Court grants summary judgment for Chase on any claim under Article Seven of the WVCCPA.

## IV. CONCLUSION

For the aforementioned reasons, the Court finds the following: For Defendant's Motion for Partial Summary Judgment on Counts One and Two (ECF No. 107), the Court **GRANTS IN PART**, **DISMISSES** Count Two in its entirety and Debbie Fredeking as a Plaintiff from Count One of the Complaint, and **DENIES IN PART** for the remainder; For Defendant's Motion for Partial Summary Judgment on Count Three (ECF No. 105), the Court **GRANTS IN PART**, **DISMISSES** Debbie Fredeking as a Plaintiff in Count Three of the Complaint and all claims under West Virginia Code Articles Six and Seven, and **DENIES IN PART** for the remainder; For Plaintiffs' Motion for Partial Summary Judgment (ECF No. 110), the Court **DENIES** the motion.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 19, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE